292 So.2d 703 (1974)
STATE of Louisiana
v.
Eddie VARICE.
No. 54048.
Supreme Court of Louisiana.
March 25, 1974.
*704 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ronald C. Martin, Dist. Atty., John S. Stephens, Asst. Dist. Atty., for plaintiff-appellee.
John Makar, Makar & Whitaker, Natchitoches, for defendant-appellant.
MARCUS, Justice.
Defendant, Eddie Varice, was indicted for murder, R.S. 14:30, was tried by jury, convicted and sentenced to life imprisonment without benefit of parole, probation, commutation or suspension of sentence. These proceedings were held in the Tenth Judicial District Court for the Parish of Natchitoches in the City of Natchitoches. On appeal, defendant relies upon seven bills of exceptions to obtain a reversal of his conviction and sentence.
Bill of Exceptions No. 1 was reserved when the trial judge denied defendant's motion to quash the grand jury indictment. No transcript is attached to the bill. However, the minutes reflect a stipulation between defense counsel and the State.
The motion to quash alleges the indictment is invalid because it was obtained as a result of undue influence, pressure and publicity from comments made by the District Attorney which appeared in a news article in the ALEXANDRIA DAILY TOWN TALK. The remarks were as follows: "* * * if they [grand jury] do not return a true bill on Varice then he [District Attorney] will file a charge of manslaughter against the Natchitoches man." It was stipulated that the newspaper article reflects substantially the comments made by the District Attorney and was published in the local newspaper and broadcast over the local radio station (Natchitoches). Counsel for defendant argues that the remark was in the nature of a threat equivalent to an order to return an indictment, and the members of the grand jury, being aware of the remark because of local publication, were unduly influenced in their deliberations thereby.
There is no evidence supporting this contention in the record. No showing has been made that any member of the grand jury was aware that such remark had been made. Thus, since no showing of prejudice has been made, the bill is without merit.
*705 Bill of Exceptions No. 2 relates to the introduction by the State of a sworn handwritten statement by the defendant (S-2). The error asserted is the erroneous times set forth in the document. Defendant argues that the "Warning as to Rights and Waiver" form (S-1) was incorrectly timed 8:50 a. m., whereas defendant's written statement was marked as having started at 8:00 a. m. and completed at 8:50 a. m. The police officer explained that this was a clerical error on his part as the "Warning as to Rights and Waiver" form (S-1) should have been timed 8:00 a. m. since it was executed immediately prior to the commencement of the written statement. The transcript clearly shows that no objection was made nor a bill reserved at the time of the introduction of the statement.
Hence, the contention made under this bill may not be reviewed since a bill of exceptions based upon the admission or rejection of evidence must be grounded on an adverse ruling at the time the evidence is tendered. Article 841 C.Cr.P. and State v. Weber, 221 La. 1093, 61 So.2d 883 (1952). We have nevertheless reviewed the record and find that the testimony of the police officer adequately explains the clerical error involved.
The bill is without merit.
Bill of Exceptions No. 3 was reserved when the court overruled an objection made by defense counsel to certain remarks made by the District Attorney in his rebuttal argument before the jury. It is contended that the remarks were prejudicial, inflammatory and not proper rebuttal.
Defendant had referred to certain advantages the State has over the accused in his closing argument. The District Attorney, in rebuttal, referred to the fact that, while the State had afforded the accused the benefit of all possible constitutional protections, the accused had not afforded the same rights to the victim herein. He then proceeded to say in reference to the accused: "He came there and he himself took the law into his own hands. He, himself, was judge and jury in this instance as to what was right and what was wrong, and he was the executioner of Lawrence Below."
We have reviewed the entire closing argument and, while the District Attorney was somewhat over-zealous in making these remarks, we do not find them to be either prejudicial or inflammatory. Furthermore, in view of the remarks made by the defense counsel in his closing argument, we do not consider the remarks by the District Attorney to be improper rebuttal.
Bill of Exceptions No. 3 is without merit.
Bills of Exceptions Nos. 4, 5, 6 and 7 were all reserved when the court denied defendant's motion for a new trial, motion for authority to subpoena jurors and motion in arrest of judgment. Since the arguments contained in these motions are the same, these bills will be considered together.
These motions were predicated on three separate contentions. First, it is alleged that the order in which the responsive verdicts appeared on the list given to the jury, especially without an explanation by the court, prejudiced the defendant. The jury was furnished with the following list of responsive verdicts:
"(1) We, the Jury, find the accused, Eddie Varice, guilty.[1]
"(2) We, the Jury, find the accused, Eddie Varice, guilty without capital punishment.

*706 "(3) We, the Jury, find the accused, Eddie Varice, guilty without capital punishment without benefit of parole, probation, commutation or suspension of sentence.
"(4) We, the Jury, find the accused, Eddie Varice, guilty of manslaughter.
"or
"(5) We, the Jury, find the accused, Eddie Varice, not guilty."
After its deliberations, the jury selected responsive verdict No. 3. It was properly written and signed on the reverse side of the list of responsive verdicts by the foreman of the jury. Defendant argues that the placement of the responsive verdicts on the list given to the jury was such that it created in the minds of the jurors the impression that they were rendering a verdict less severe than "guilty" or "guilty without capital punishment," when, in fact, they were rendering the most severe penalty allowable under law at the time. Defendant further contends that he was prejudiced by the failure of the court to instruct the jury on the meaning of responsive verdict No. 3. We do not agree. First, there is no showing, nor is it contended, that defendant submitted to the court any special charges in this regard. Article 807 C.Cr.P. Secondly, the list of responsive verdicts makes clear the severity of each. The jury had been instructed by the court to disregard responsive verdict No. 1. Responsive verdict No. 2 was "guilty without capital punishment," whereas, responsive verdict No. 3 was "guilty without capital punishment without benefit of parole, probation, commutation or suspension of sentence." It is obvious that the qualification of "without benefit of parole, probation, commutation or suspension of sentence" added in responsive verdict No. 3 made this responsive verdict more severe than responsive verdict No. 2.
Finally, we must assume that the jury was composed of twelve intelligent men. These jurors withstood voir dire examination and were accepted by both the State and the defendant. The list of responsive verdicts is clear and understandable to a reasonably intelligent person. Also, the State in closing argument advised the jury that, if they did not understand any particular aspect of the proceedings, the court would further advise them. No such request for additional instructions was made. Under these circumstances, we conclude that the allegation is without merit.
Next, defendant argues that the verdict returned directs which sentence shall be imposed by the judge and, as such, amounts to an invasion of the province of the judge.
Article 817 C.Cr.P., as amended by Act 502 of 1972,[2] provides in part:
"In a capital case the jury may qualify its verdict of guilty as follows:
"(1) With the addition of the words, `without capital punishment', in which case the punishment shall be imprisonment at hard labor for life, or
"(2) With the addition of the words `without capital punishment or benefit of parole, probation, commutation or suspension of sentence', in which case the punishment shall be imprisonment at *707 hard labor for life without benefit of parole, probation, commutation or suspension of sentence."
We do not find that this article conflicts with any statutory or constitutional provision authorizing the court to impose sentence. This article merely provides a manner in which the jury is authorized to qualify its verdict.
Finally, defendant argues that the verdict imposed is unconstitutional in that it restricts certain constitutional powers of the Governor.
Section 10 of Article V of the Louisiana Constitution of 1921 provides:
"The governor shall have power to grant reprieves for all offenses against the state; and may, except in cases of impeachment, or treason, upon the recommendation in writing of the lieutenant governor, attorney general, and presiding judge of the court before which the conviction was had, or any two of them, grant pardons, commute sentences, and remit fines and forfeitures; provided, however, that each first offender who has never previously been convicted of a felony shall be eligible for pardon automatically upon completion of his sentence without the aforementioned recommendation in writing. In case of treason he may grant reprieves until the end of the next session of the legislature, in which body the power of pardoning is vested."
That section of the Constitution grants to the Governor the authority to commute sentences. The power to commute sentences has been held to be incidental and akin to the power to pardon. State v. Rose, 29 La.Ann. 755 (1877). In addition, the pardoning power has been held to be an executive function which cannot be restricted by the legislature. State v. Lee, 171 La. 744, 132 So. 219 (1931). Therefore, Article 817 of the Code of Criminal Procedure, as amended by Act No. 502 of 1972, is unconstitutional only insofar as that article purports to bestow on the jury the authority to restrict the commutation of a sentence.
The severability clause contained in Act 502 of 1972 provides:
"If any provision, phrase, word or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable."
In accordance therewith, since the remainder of Article 817, as amended by Act No. 502 of 1972, can be given effect without the word "commutation," we hereby sever that word from the article. Thus, without the offending word, Article 817, as amended by Act 502 of 1972, is constitutional.
Notwithstanding that the sentence is invalid, the conviction, being valid, can be affirmed. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); State v. Franklin, 263 La. 344, 268 So.2d 249 (1972).
For the reasons assigned, the conviction is affirmed, but the sentence is annulled and set aside, and the case is remanded to the Tenth Judicial District Court for the Parish of Natchitoches with instructions to the trial judge to sentence defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
NOTES
[1] This case was tried after Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972). The State indicated in its opening statement that it was not seeking the death penalty. The trial judge in his instructions to the jury informed them that, since there no longer was a death penalty in this State, they should not consider responsive verdict No. 1: "We, the Jury, find the accused guilty."
[2] Article 817 C.Cr.P. was again amended in 1973 by Act 125. This amendment changed Article 817 so that it now provides in its entirety as follows: "[A]ny qualification of or addition to a verdict of guilty, beyond a specification of the offense as to which the verdict is found, is without effect upon the finding." Section 2 of Act 125 of 1973 provides: "This Act shall not apply to the prosecution and trial for any crime committed before the effective date of this Act. Qualification of verdicts for crimes committed before that time shall be governed by the law existing at the time the crime was committed." The effective date of Act 502 of 1972 was August 1, 1972. The effective date of Act 125 of 1973 was July 2, 1973. In accordance therewith, since the crime for which defendant was prosecuted occurred on November 26, 1972. Article 817, as amended by Act 502 of 1972, is applicable.