292 So.2d 708 (1974)
STATE of Louisiana
v.
Alton RAMSEY.
No. 54052.
Supreme Court of Louisiana.
March 25, 1974.
Harris D. Copenhaver, Jr., Airhart & Copenhaver, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Anthony J. Graphia, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Alton Ramsey was indicted for the murder of Billy Middleton, a pharmacist. La. R.S. 14:30. After trial by jury he was found guilty without capital punishment or benefit of parole, probation, commutation or suspension of sentence. He was sentenced to the Department of Corrections for the rest of his natural life; the sentence to be served without the benefit of probation, parole, commutation or suspension of sentence.
On this appeal two contentions are made:
Article 817 of the Code of Criminal Procedure is unconstitutional in that it violates Article V, Section 10, of the Louisiana *709 Constitution by allowing the jury to qualify a guilty verdict in capital cases by imposing a life sentence without benefit of parole, probation, commutation or suspension of sentence, thus denying the Governor the right to commute the sentence.
Article 817 of the Code of Criminal Procedure is unconstitutional in that it violates the guarantee of due process and the guarantee against cruel and unusual punishment contained in Sections 2 and 12 of Article I of the Louisiana Constitution and the Eighth and Fourteenth Amendments of the Constitution of the United States. The theory of this second contention is that article 817 provides no standards for guidance and invests the jury with absolute discretion to qualify the penalty in capital cases by deciding that a person convicted shall be sentenced without the benefit of parole, probation, commutation or suspension of sentence.

I.
Article 817, as amended by Act 502 of 1972, effective August 1, 1972, is applicable to this offense committed on November 29, 1972. As amended the article provides:
"Art. 817 Qualifying verdicts in capital and noncapital cases
"In a capital case the jury may qualify its verdict of guilty as follows:
"(1) With the addition of the words `without capital punishment', in which case the punishment shall be imprisonment at hard labor for life, or
"(2) With the addition of the words `without capital punishment or benefit of parole, probation, commutation or suspension of sentence', in which case the punishment shall be imprisonment at hard labor for life without benefit of parole, probation, commutation or suspension of sentence.
"In noncapital cases, any qualification of or addition to a verdict of guilty, beyond a specification of the offense as to which the verdict is found, is without effect upon the finding."
Act 502 of 1972 amending article 817 as above quoted contained the following severability clause:
"If any provision, phrase, word or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable."
Article V, Section 10, of the Louisiana Constitution provides in pertinent part that the Governor shall have power,
"and may, except in cases of impeachment, or treason, upon the recommendation in writing of the Lieutenant Governor, Attorney General, and presiding judge of the court before which the conviction was had, or any two of them, grant pardons, commute sentences, and remit fines and forfeitures . . . ."
Clearly article 817 conflicts with section 10 of article V of the Constitution, in that article 817 permits a verdict denying the convicted defendant the right to commutation of sentence, whereas the constitution empowers the Governor to commute sentences in all cases not involving impeachment or treason. There are no other conflicts in the two provisions.
The legislature cannot divest the Governor of his constitutional powers. It is elementary and fundamental that the constitution is the supreme law of the State. It follows, therefore, that article 817 cannot stand insofar as it conflicts with the constitution by depriving the Governor of his right to commute sentences. Gaillard v. Cronvich, 263 La. 750, 269 So. 2d 231 (1972). However, in view of the quoted severability clause of the Act (502 of 1972) amending article 817 it is only necessary to strike the word "commutation" *710 from the article. In all other respects the article may stand as a valid enactment against this first contention of the defendant. This is the same result reached in the case of State v. Varice, No. 54,048 on the docket of this Court, 292 So.2d 703, decided this day.
The State argues that this defendant has no standing to complain of the article's unconstitutionality until and unless he applies for commutation of sentence and the application is denied by the Governor on the basis that the verdict imposed under article 817 denies commutation of sentence.
In view of the provision of Sections 571.3 and 571.7[1] of Title 15 of the Revised Statutes relating to the diminution of sentences for good behavior and commutation of sentence when recommended by the superintendent of the state penitentiary, we are of the opinion defendant's right to apply for commutation of sentence will be affected unless the provision denying commutation is stricken from article 817.
For instance, in the case of prisoners serving life sentence, section 571.3 declares that "inmates serving life sentences will be credited with good time earned which will be applied toward diminution of their sentences at such time as the life sentences might be commuted to a specific number of years." On the authority of article 817, if it were permitted to stand as written, no consideration may be given to this defendant's right to accumulate "good time" during his incarceration. For since under article 817 he has no right to commutation, "good time" would be irrelevant to his case. In like manner, under section 571.7 whenever a life inmate "so conducts himself as to merit the approval of the superintendent of the state penitentiary he may apply for a commutation of his sentence and the application, upon the approval of the superintendent, shall be forwarded to the governor," the conduct of the defendant would be of no concern to the superintendent in relation to commutation of sentence, for defendant would not be entitled to commutation. Thus, from day to day since his commitment, article 817 is affecting defendant's right to commutation and the basis upon which the Governor may grant that relief. He therefore has standing to challenge the constitutionality of the article.

II.
In his second contention that article 817 is unconstitutional, defense counsel argues that the unlimited authority which the article grants to the jury to qualify the penalty in capital cases without prescribing standards for its guidance is repugnant to the "thread of reasoning" running through the decision of the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, *711 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). This "thread of reasoning", which counsel contends pervades the decision in Furman v. Georgia, announces the proposition that the imposition of capital punishment by judges and juries possessing total and absolute discretion to impose death or other punishment is offensive to the American standards of justice and was the "primary factor" in declaring the death penalty to be cruel and unusual punishment.
This proposition, it is argued, is applicable to article 817 even though the authority to deny "commutation" is severed, for there are no standards to limit the jury's discretion in qualifying its verdict in this case.
The per curiam opinion in the Furman Case, which carried by a five to four vote contained no reasons for the judgment. There is, therefore, no clearly stated basis for the decision by a majority of the court. The authority of the jury to arbitrarily impose the death penalty does not seem to be the basis of the decision. Such an argument is more properly one to be made on the constitutional guarantee of equal protection of the laws and not one under the guarantee against cruel and unusual punishment which was the apparent basis for the decision in the Furman Case.
We observe no infringement upon State constitutional rights in this second contention and no denial of Federal constitutional rights under current interpretation of the eighth and 14th amendments relied upon by the defense.
Following the decision in the Furman Case applications to this court to set aside convictions involving sentences of death were granted with a decree that the conviction was not affected by the Furman Case declaring the death penalty unconstitutional, but that decision made it necessary that the case be remanded for correction of the sentence from death to life imprisonment. See State v. Franklin, 263 La. 344, 268 So.2d 249 (1972). The principle is applicable to the case at bar. The case must be remanded to the trial court to correct the sentence by deleting therefrom any denial of commutation; in other respects the sentence is to remain unchanged.
For the reasons assigned, the conviction is affirmed, but the sentence is annulled and set aside, and the case is remanded to the Nineteenth Judicial District Court for the parish of East Baton Rouge with instructions to the trial judge to sentence defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
DIXON, J., concurs, disagreeing with treatment of Part II.
NOTES
[1] La.R.S. 15:571.3 provides:

"B. Every inmate in the custody of the Department of Corrections who has been convicted of a felony and sentenced to imprisonment for a stated number of years or months may earn a diminution of sentence by good behavior and performance of work or self improvement activities or both to be known as `good time.' Those inmates serving life sentences will be credited with good time earned which will be applied toward diminution of their sentences at such time as the life sentences might be commuted to a specific number of years. The director of corrections shall establish procedures for awarding and recording of good time and shall determine when good time has been earned toward diminution of sentence. The amount of diminution of sentence allowed shall be as otherwise provided by law."
L.R.S. 15:571.7 provides:
"Whenever a prisoner who has been convicted of a crime and sentenced to imprisonment for life, so conducts himself as to merit the approval of the superintendent of the state penitentiary he may apply for a commutation of his sentence and the application, upon approval of the superintendent, shall be forwarded to the governor. The governor may commute the sentence upon the recommendation in writing of the lieutenant governor, attorney general, and presiding judge of the court before which the conviction was had or any two of them. No commutation under the provisions of this Section shall reduce the period of incarceration to less than ten years and six months."