294 So.2d 489 (1974)
STATE of Louisiana, Appellee,
v.
Dennis Wayne CHAVERS, Appellant.
No. 54234.
Supreme Court of Louisiana.
April 29, 1974.
Rehearing Denied June 7, 1974.
*490 Joseph D. Cascio, Jr., Hayes, Harkey, Smith & Cascio, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Charles A. Traylor, II, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Chavers was convicted of manslaughter, La.R.S. 14:31, and sentenced to ten years' imprisonment at hard labor.
The twelve bills of exceptions perfected for his appeal urge two principal alleged errors: (1) The total absence of evidence that the defendant was guilty of the crime charged; and (2) The denial of constitutional rights to remain silent and to obtain compulsory process of witnesses.

(1)
The defendant Chavers is charged with manslaughter, the unlawful killing of James W. Johnston. By a bill of particulars, the state specified that the death had resulted when Chavers was engaged in the perpetration of a felony or intentional misdemeanor against the person of Johnston, *491 see La.R.S. 14:31(2) (a)[1], and that Chavers was engaged in such perpetration as a principal, La.R.S. 14:24[2], along with Billy Ray Simpson.
The state introduced evidence tending to prove the following:
Chavers and Simpson, along with two girls, had met Johnston in a bar. Later that evening, about midnight, the five of them left the bar together in the defendant's station wagon. Johnston was in a very intoxicated condition. They went to a deserted recreational area located near Cheniere Lake known as Area 5.
The three men left the car, presumably to answer a call of nature, leaving the two women in the vehicle. The two women were the state's two chief witnesses to prove the crime.
While the women were sitting in the automobile, Chavers came back to get his tire tool, because (he said) the decedent Johnston had pulled a switchblade on Simpson. Shortly afterwards, the women went back and saw Johnston lying on the ground, with Simpson rubbing his fist and saying that he had hit the decedent with it. Chavers said he had not used the tire tool.
The four left Johnston on the ground, still unconscious, because Chavers did not want to put him back in his station wagon. They returned to Area 5 in Simpson's car, picked up Johnston (who was still unconscious but alive), then drove him to a parked truck in another locality and placed him inside. The stated intention of Chavers and Simpson was to let Johnston stay there until he sobered up and returned to consciousness.
The evidence tends to prove that Chavers removed the unconscious Johnston's wallet at the time the party first left him on the ground, and that Simpson removed Johnston's shoes and watch when they last left him in the truck. They returned the next day to Area 5 to search for money missing from the wallet.
Before the party had first gone to Area 5, they had stopped for gas. One of the girls had noticed Chavers and Simpson talking together while Johnston was paying for the gas. The girls wanted to go home, but Simpson and Chavers insisted they first go to a camp near the lake.
Johnston was found dead in the truck two days later. The coroner performed an autopsy and found that he had died of a heart attack two days earlier and that he had a pre-existing severe heart condition. The coroner found no evidence of any blow to the body. He did state, however, that a blow on the jaw could have aggravated enough emotion to cause a heart attack, in view of the decedent's severe pre-existing coronary condition.
The defendant urged a total lack of evidence to prove the crime by: a motion for a directed verdict at the close of the state's case (Bill No. 9) and also at the close of all evidence (Bill No. 10), see La.C.Cr.P. art. 778, State v. Douglas, 278 So.2d 485 (La.1973); and also by a motion for a new trial (Bill No. 11), see La.C.Cr.P. art. 851, State v. Randolph, 275 So.2d 174 (La. 1973).
The trial court essentially held that the testimony of the two girls and of the coroner established a prima facie case of manslaughter, i. e., of a homicide committed (although without intent to cause death or great bodily harm) when the defendant and his accomplice were engaged in the *492 perpetration of a crime; so that the guilt or innocence was properly determinable by the trial jurors.
We find no error in this ruling.
The testimony of the girls indicates that the decedent Johnston was struck by Simpson, that Simpson and the defendant Chavers then robbed him, and that Simpson and the defendant Chavers subsequently left the stricken man alone and unattended. The jury might also reasonably infer from the evidence that Simpson and the defendant Chavers had brought the decedent Johnston to the deserted Area 5 with the intention of robbing him, that as part of the joint scheme Simpson had committed a battery by striking Johnston on the jaw with his fist[3], and that the act of Simpson in striking Johnston in furtherance of their common enterprise to commit a robbery is deemed to be the act of the defendant Chavers as well as of Simpson, La.R.S. 15:455.
With regard to causation, the uncontradicted medical testimony indicates that, in people who have heart disease, a heart attack may be precipitated by an incident that arouses the emotions of the individual. Tr. 239. The medical witness also stated that, with a coronary condition as bad as Johnston's, a blow on the jaw could aggravate enough emotion to cause a heart attack. Tr. 241.
Thus, the trial jury could reasonably find that the blow to the jaw precipitated the heart attack in Johnston, due to his pre-existing unusually severe coronary condition.
A death so caused may be entirely unforeseeable on the part of the person who hit the victim suffering with a pre-existing weakness. Nevertheless, such person's blow is regarded as being a direct cause of the victim's death, for which the person is criminally responsible, at least for purposes of the misdemeanor-manslaughter rule such as is here involved. LaFave and Scott, Criminal Law, 245, 257, 263-67, 600-02 (1972); Hall, General Principles of Criminal Law, 257-61 (2d ed., 1960); 1 Wharton Criminal Law and Procedure, Section 202 (Anderson ed. 1957); Focht, Proximate Cause in the Law of Homicide, 12 So.Calif.L.Rev. 19 (1938); 40 C.J.S. Homicide § 11d. Although the holdings to this effect have received scholarly criticism, see, e. g., Hall cited above, they do represent the prevailing view in American decisional interpretations of the misdemeanor-manslaughter statutes.
We therefore find no merit to the defendant's contentions that the state did not prove all of the elements of the crime with which the defendant was charged. There was some, indeed sufficient, evidence by which the trial jury could find the defendant guilty of manslaughter as charged.
For similar reasons, we find no reversible error in the trial court's ordering all portions of the testimony to be transcribed and made part of the record. (Bill No. 12)
The only contention made for the need of such total transcription is that the total evidence failed to prove the crime chargeda contention shown to be without merit upon transcription of the entire testimony of the State's three principal witnesses. The transcription of this testimony shows there is in the evidence sufficient evidence to make out a prima facie case against the defendant. It is completely adequate for a full review of the defendant's contentions in this regard. No prejudice is shown by the failure to transcribe other testimony irrelevant for purposes of deciding the issues so raised. State v. Gilbert, 286 So.2d 345 (La. 1973).

(2)
The next major error alleged by the defendant is a claim of denial of the constitutional *493 rights of an accused to remain silent and to obtain compulsory process of witnesses. Louisiana Constitution, Article 1, Sections 9, 11 (1921); United States Constitution, Fifth and Sixth Amendments.
This issue is raised by Bills Nos. 1 and 3, as follows:
Prior to trial, the defendant moved to summon, at state expense, the attendance of witnesses from outside of Louisiana. He is entitled to do so under La.C. Cr.P. art. 741. However, under this article and Article 744, he is not entitled to do so without a prior showing that the testimony sought is material and relevant. The defendant contended that his constitutional rights above noted would be prejudiced if such showing were required, and he perfected a bill as to the trial court's refusal to issue the order in the absence of such showing. (Bill No. 1.)
Later, when four witnesses subpoenaed by him did not show up on the day of the trial, the defendant moved for a continuance. Based on the same constitutional grounds, the defendant perfected a bill to the trial court's refusal to entertain a motion for continuance based on the non-appearance of witnesses unless, as required by La.C.Cr.P. art. 709(1), the defendant showed the materiality of the testimony by stating the facts to which the absent witness was expected to testify. (Bill No. 3.)
The substance of the contention, thus, is that the defendant has an unqualified right to secure the compulsory attendance of witnesses, or to secure a continuance if (having been subpoenaed they do not show up), without being forced to disclose what they would testify. He argues that to compel this disclosure is to compel him revealing part of his case, in derogation of his constitutional right to remain silent.
However, the constitutional right to secure the compulsory attendance of witnesses does not include within its compass the summoning at state expense of all witnesses demanded by the accused, regardless of whether their testimony is material or relevant.
The United States Supreme Court has recognized that the Sixth Amendment provision granting the criminally accused the right to compulsory process for obtaining witnesses is applicable to the states under the Fourteenth Amendment. Washington v. State of Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). However, that decision itself recognizes that the right to compulsory process extends to witnesses "whose testimony would have been relevant and material to the defense." 388 U.S. 23, 87 S.Ct. 1925. See United States v. Swindler, 476 F.2d 167, 170 (CA 10, 1973); Hoskins v. Wainwright, 440 F.2d 69 (CA 5, 1971). This is the general rule in other American jurisdictions, too. 2 Wharton's Criminal Evidence, Section 504 (13th ed., 1972); 2 Underbill's Criminal Evidence, Section 521, esp. at pp. 1313-14 (5th ed., 1956). See also 97 C.J.S. Witnesses §§ 6, 7, and 9. Cf., e. g., State v. Clifton, 247 La. 495, 172 So.2d 657 (1965) (syllabus 13).
Thus, such authorities indicate that the defendant's constitutional right not to incriminate himself is not infringed if he is required to make some showing of necessity (and that the right to compulsory process exists) for the subpoena of witnesses at state expense.
Similarly, the accused's right not to give evidence against himself is not violated when, to secure a continuance because of the failure of his witnesses to show up, he is required to show that indeed he will be thereby prejudiced. If it were otherwise, the trial of an accused could be indefinitely delayed through his subpoena of unbeatable witnesses, who if present might not be able to testify to any relevant or material fact.
While the accused himself is not required to furnish evidence incriminating *494 himself, a valid state interest may require of him reasonable pre-trial disclosure of the names of witnesses he intends to utilize. Since the names of these witnesses and the content of their testimony will be offered later at the trial anyway, his right against self-incrimination may not be offended, especially where the state reciprocally offers an advantage to him in return for the disclosure.
See Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). See also Jones v. Superior Court, 58 Cal.2d 56, 22 Cal.Rptr. 879, 372 P.2d 919 (1962) and American Bar Association Standards for Criminal Justice, Relating to Discovery and Procedure Before Trial, Standards 1.2, 2.1, 3.3.
The statutory predecessors of similar import to La.C.Cr.P. art. 709[4], conditioning a continuance upon disclosure of what the absent witnesses might testify, have been consistently upheld as constitutional and applied (at least, where compulsory process was actually afforded the accused, but the subpoenaed witness did not show up).
See, e. g.: State v. McCart, 210 La. 278, 26 So.2d 745 (1946); State v. Stewart, 117 La. 476, 41 So. 798 (1906); Annotation, Admissions to Prevent Continuance Sought to Secure Testimony of Absent Witnesses in Criminal Case, 9 A.L.R.3d 1180, 1191 (Louisiana cases) (1966). But see: State v. Fairfax, 107 La. 624, 31 So. 1011 (1902); State v. Pruett, 49 La.Ann. 283, 297-298, 21 So. 842 (1897). See also: 2 Wharton's Criminal Procedure, Section 511 (13th ed., 1972); Underbill's Criminal Evidence, Section 540 (5th ed., 1956).
We therefore find no merit in Bill Nos. 1 and 3, raising the constitutional issues of prior disclosure (a) before obtaining compulsory summoning at state expense of out-of-state witnesses and (b) before a motion to continuance because of absence of subpoenaed witnesses will be considered.
Closely related to these bills are Bill Nos. 2 and 4. The former (No. 2) was taken when the trial court denied the out-of-state subpoenas as to three of the out-of-state witnesses, although granting it as to a fourth, after an in camera showing of the materiality and relevance (or not) of their testimony. The latter (No. 4) was taken when the trial court refused a continuance, upon a finding that, although an opportunity was given to amplify, the motion for continuance did not allege the facts to which the absent witnesses (other than the out-of-state one) would testify, nor due diligence used to obtain their attendance, as required by La.C.Cr.P. art. 709(1) and (3).
We do not find the trial court abused his discretion in denying a continuance for the reasons assigned by him, insofar as the two in-state witnesses who did not show up. We therefore find no merit to Bill No. 4 as to them.
Insofar as the out-of-state witness was concerned, as well as the three other children not summoned from out-of-state, the testimony sought was alleged to be admissions made by Simpson, the accomplice, in front of the four children and their mother, Mrs. Appleton. (The latter was one of the two women who went to the lake with Simpson and the defendant Chavers.) By these admissions, Simpson was alleged to have stated that he was entirely to blame for the death, and that Chavers was free from fault.
*495 In the light of the full trial testimony of the state witnesses present at the time Simpson struck the decedent, we find no reversible error involved in the failure to grant a continuance because of the absence of the out-of-state witness (nor, for similar reasons, in the failure to subpoena the additional three younger children from out-of-state). See Bill Nos. 3 and 4.
In the first place, the state witnesses testified that Simpson alone struck the decedent; thus, the testimony of the out-of-state witnesses to the same effect was cumulative and unnecessary, in the absence of dispute. In the second place, such testimony as to what Simpson had said after the common robbery enterprise was ended and the parties went to Oklahoma, was hearsay and not admissible under La.R.S. 15:455, see State v. Witherspoon, 292 So. 2d 499 (La.1974); and is presently of doubtful admissibility under any other exception to the hearsay rule, see State v. Morrow, 260 La. 72, 255 So.2d 78 (1971) and McCormick on Evidence, Section 278 (2d ed. 1972). In the third place, assuming the evidence is admissible, nevertheless, from a post-trial standpoint, there is doubt as to its existence: The pre-trial showing was that Mrs. Appleton was present when Simpson made these admissions to her children; nevertheless, no effort was made by the defendant to educe from her when she was a witness at the trial her version of Simpson's post-trial declarations that he was solely responsible for the crime.
Thus, in summary, we do not find merit in Bill Nos. 1, 2, 3, and 4.

Other Bills
We find no merit to the other bills perfected:
Bill Nos. 5, 7, and 8: The defendant Chavers objected to evidence of events that occurred on the morning following the battery, as irrelevant and beyond the crime of manslaughter charged as having occurred earlier. The evidence was to the effect that, on the morning following the battery, the defendant Chavers, Simpson, the girls, and two other friends returned to the scene of the battery (Area 5) to search for money not found in the victim Johnston's wallet, as well as for anything else of value. (Simpson found and kept a cigarette lighter belonging to Johnston.)
The trial judge properly overruled the objection. The evidence was admissible as constituting additional acts done in furtherance of the Simpson-Chavers common enterprise of robbery, La.R.S. 15:455, in the course of which the battery causing the death occurred. It was relevant as tending to prove that the defendant Chavers was a principal in the crime, La.R.S. 14:24, 14:26, and thus responsible for all acts, La.R.S. 15:455, such as the battery, done in furtherance thereof.
Bill No. 6: Certain photographs of the decedent were objected to as inadmissible and irrelevant. The test of admissibility is whether the probative value of the photographs outweights their probable inflammatory effect; further, to be admissible, they must be relevant for some purpose. State v. Curry, 292 So.2d 212 (La.1974).
Since the photographs were not needed for identification of the victim, the issue is close. Nevertheless, they did have some probative value as showing the victim as discovered on the floorboard of the truck, thus to some extent corroborating the testimony of the state's witnesses that the victim had been left in the truck by Simpson and the defendant Chavers. We agree with the trial court that the photographs themselves were not unduly inflammatory.

Decree
For the reasons assigned, we affirm the conviction and sentence.
Affirmed.
*496 DIXON, J., concurs with reasons.
BARHAM, J., dissents with reasons.
DIXON, Justice (concurring).
I agree with the majority opinion in this case. In addition, there is testimony that the defendant kicked the deceased while he was unconscious, after robbing him and before moving him, unconscious, to the parked truck.
BARHAM, Justice (dissenting).
This defendant was charged with manslaughter under R.S. 14:31 (2) (a), which provides:
"Manslaughter is:
"(2) A homicide committed, without any intent to cause death or great bodily harm.
"(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30, or of any intentional misdemeanor directly affecting the person; or * * *." (Emphasis supplied).
The facts show that the defendant's accomplice, Simpson, hit the victim and knocked him to the ground unconscious. At the same time this defendant was in the presence of two witnesses who saw Simpson strike the victim. Simpson and Chavers later robbed the victim while he was unconscious on the ground. If Simpson and Chavers had intended to commit robbery, so that Simpson's blow would be imputed to Chavers, even though he had run away from the scene and gone back to the car to ask the girls for a tire tool to protect himself and Simpson from an assault by the decedent, then they should properly have been charged with murder. Robbery is a felony enumerated in Article 30, the murder statute, and therefore it is not a felony for which a prosecution for manslaughter will lie.
This defendant, Chavers, did not commit a felony "not enumerated in Article 30," or an "intentional misdemeanor directly affecting the person" upon the victim. He was not a principal to any such act. There are facts sufficient to warrant a jury finding that the parties intended to commit robbery and therefore a murder indictment and verdict would be proper. However, the manslaughter statute excludes that felony as a basis for indictment and verdict of manslaughter. This defendant could only be guilty of murder or of negligent homicide. I am of the opinion that the State chose to charge the defendant under the wrong statute. The State has failed to prove the necessary ingredients of manslaughter. The motion for a directed verdict should have been granted.
I respectfully dissent.
NOTES
[1] La.R.S. 14:31(2) (a) provides:

"Manslaughter is: * * *
"(2) A homicide committed, without any intent to cause death or great bodily harm.
"(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30, or of any intentional misdemeanor directly affecting the person; * * *"
[2] La.R.S. 14:24 provides:

"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
[3] See La.R.S. 14:34, defining a simple battery; an intentional, see La.R.S. 14:33, misdemeanor affecting the person.
[4] Article 709, Louisiana Code of Criminal Procedure, provides:

"A motion for a continuance based upon the absence of a witness must state:
"(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
"(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
"(3) Facts showing due diligence used in an effort to procure attendance of the witness."