264 So.2d 595

STATE of Louisiana

v.

Chester A. CLOUATRE.

No. 51517.

June 29, 1972.

Andrews & Barry, Dean A. Andrews, Jr., New Orleans, for defendant-appellant.

William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

SUMMERS, Justice.

Appellant was charged by bill of information with possession of a narcotic drug.

He was tried, found guilty and sentenced to serve six years at hard labor. On this appeal a number of bills of exceptions are presented for consideration.

### Bill 1

This bill was reserved to the trial judge's denial of defendant's motion to suppress "any tangible objects or other property or documents, books, papers or other writings." The ground of the objection is that the objects obtained from the person of the accused were illegally seized. The illegality is said to stem from the objects having been obtained in violation of his rights under the Fourth Amendment to the United States Constitution and Section 7 of Article I of the Constitution of Louisiana. In short, the arrest was without reasonable, or probable, cause.

The test this Court has applied to a determination of probable cause has been recently expressed in State v. Dell, 258 La. 1024, 249 So.2d 118 (1971). In effect we said there that under Article 213 of the Code of Criminal Procedure a police officer may arrest a person without a warrant whenever the officer has reasonable cause to believe that the person to be arrested is committing a crime. Numerous decisions of this Court have held that reasonable, or probable, cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to justify a man of average

caution in believing that an offense is being committed; and that in determining the existence of reasonable cause for arrest, the rigorous proof required for conviction is not needed, as the concept of reasonable cause is something less than this and must be judged by common sense and by practical considerations of day-to-day life on which average, experienced police officers can reasonably be expected to act.

The police officers who made the arrest knew of Clouatre. They knew him to be a known user of narcotics. Three officers, Sergeant Fred Williams and Detectives Derose and Saacks, had a residence under surveillance, a place where traffic in narcotics was known to take place. Three days previously another individual in possession of narcotics had been arrested as he departed from this residence. Clouatre was observed entering the residence. His actions were generally suspicious and not those of an unconcerned citizen. The officers pulled abreast of Clouatre shortly thereafter as he was walking along the street after leaving the residence. At that time they saw glassine envelopes in his left hand (these being the usual containers for heroin). He was then arrested and almost immediately he was patted down, and a "cooker" and hypodermic outfit were found in his pants pocket. These are the objects sought to be suppressed.

In our view these facts support a finding of probable cause for the arrest, search and seizure, and the trial judge properly denied the motion to suppress. This bill is, therefore, without merit.

### Bill 2

When defense counsel objected because the prosecutor read Article 401 of the Code of Criminal Procedure to a prospective juror during examination on voir dire to ascertain if the juror met the qualifications prescribed by that article, this bill was reserved. The article reads:

In order to qualify to serve as a juror, a person must:

(1) Be a citizen of the United States and of this state who has resided within the parish in which he is to serve as a juror for at least one year immediately preceding his jury service;

(2) Be at least twenty-one years of age;

(3) Be able to read, write, and speak the English language;

(4) Not be under interdiction, or incapable of serving as a juror because of a mental or physical infirmity; and

(5) Not be under indictment for a felony, nor have been convicted of a felony for which he has not been pardoned.

Although claiming that the reading of this article to the prospective jurors preju-

diced his client, defense counsel has not set forth wherein the alleged prejudice occurs; nor does he cite authority in law to support his position. The objection has no merit. This bill has no merit.

### Bill 3

■ When the prosecutor named four of the witnesses the State would call and sought to ask prospective jurors on voir dire whether they were acquainted with them, defense counsel objected.

Under Article 797(2) of the Code of Criminal Procedure a juror may be challenged for cause by either the State or the accused on the ground that the juror is not impartial, whatever the ground of his partiality. This questioning could reasonably lead to a test of the juror's impartiality. Moreover, the trial judge informs us in a per curiam that he overruled the objection because counsel would be entitled to this information in order to exercise a peremptory challenge under Article 797 of the Code of Criminal Procedure.

The ruling is reasonably well-founded and within the discretion of the trial judge. It does not warrant reversal. No prejudice is shown. La.Code Crim.P. art. 921.

The bill is without merit.

### Bills 4 and 5

■ During voir dire examination the prosecutor read Section 962 of Title 40 of the Revised Statutes, the statute defining the crime of which he is charged, in order to ascertain from the prospective jurors whether they entertained objections to enforcing the law governing the possession of narcotics such as heroin.

Although we have disapproved lengthy statements of particular phases of law to jurors on voir dire examination, this incident only involves a verbatim recitation of the statute under which the accused was charged.

Considering the discretion which the law invests in the trial judge this ruling was proper.

The bill is without merit.

### Bill 6

■ In questioning the prospective jurors on voir dire, the prosecutor asked them whether they would accept the law to the effect that the quantity of heroin possessed by an accused is unimportant to the charge of possession of narcotics, so long as some quantity is in his possession—such as the residue in some object, a minimal amount. Defense counsel objected to the question and the objection was overruled.

No abuse of discretion results from this ruling. Although we think this questioning treads unduly close to that stage of excessive inquiry into the law which is objec-

tionable, the circumstances reveal no abuse of the trial judge's discretion.

### Bill 7

■ On voir dire the prosecuting attorney sought to explain to the prospective jurors the concept of reasonable doubt in the law as it relates to a criminal trial, and defense counsel objected. We are not furnished with argument or authority in support of the defense objection, except, it is said, the questioning transcends the limits within which the law may be discussed on voir dire and the ruling goes beyond the latitude allowed the trial judge in such matters.

We note no abuse of discretion and find this bill to be without merit.

### Bills 8, 10 and 19

■ Defense counsel reserved this bill to the ruling of the trial judge permitting the State's expert witness to testify over his objection.

The State was eliciting testimony from the chemist who made the analysis of the narcotic seized on Clouatre. The chemist explained in his testimony how he conducted the examination and in doing so exhibited the evidence envelope containing the narcotic and paraphernalia taken from Clouatre's pockets. The objection was that no proper predicate was laid to permit the evidence to come before the jury.

Later as the chemist described how he made an incision in the front of the envelope, withdrew the material therefrom and analyzed it, objection was made that the chemist was no longer employed by the police and was, therefore, unable to account for what happened to the evidence in the interim between the time when he worked for the police and the time of the trial when he testified.

As we understand this contention, the State did not lay the proper predicate for the introduction into evidence of the narcotic paraphernalia seized from Clouatre —that is, custody and connexity were not established. Reliance is placed upon Article 773 of the Code of Criminal Procedure to sustain the defense position. That article reads:

Neither the state nor the defendant can be controlled by the court as to the order in which evidence shall be adduced; but when the evidence requires a foundation for its admission, the foundation must be laid before the evidence is admissible.

Aside from the fact that the objection to the admissibility of this evidence as the fruit of an unlawful arrest, search and seizure had already been determined in the motion to suppress, the requirement that

the foundation must be laid before the evidence is admissible is itself subject to exceptions

The basic purpose of the quoted article, as the comment explains, is to allow counsel to have a free hand in the conduct of his case. Furthermore, frequently the admissibility of some evidence depends on whether other evidence is admitted. Necessarily, such related evidence cannot be introduced at the same moment and frequently requires the joint testimony of several witnesses. Usually, therefore, the first piece of evidence is admitted subject to being "connected up" or subject to the second related piece of evidence being admitted.

Since it has not been shown that this testimony and evidence exhibited to the jury was not properly "connected up" by subsequent evidence, the objection has no merit.

### Bills 9 and 12

In testifying, the chemist who analyzed the narcotic seized from Clouatre stated, "This is what we call an evidence envelope . . . ." Defense counsel objected to the use of the word "evidence" and moved for a mistrial. The trial judge sustained the objection to the use of the word "evidence" but denied the motion for mistrial. To this latter ruling defense counsel reserved a bill of exceptions.

Subsequently, during direct examination, the prosecuting attorney asked the chemist, "Did you conduct a chemical examination of the evidence that you received in the envelope?" Again objection was made to the use of the word "evidence", and defense counsel moved for a mistrial. A bill was reserved to the denial of the motion.

■ The words "evidence envelope" are in general use among law enforcement authorities to describe containers used to safeguard items having value as evidence. Evidence envelopes are laboratory aids for classifying and preserving objects such as those in use at this trial. There is no showing that these words were used to prejudice the accused or that their use did in fact result in prejudice.

■ Mistrial is a drastic remedy. It is only authorized in specified instances where unnecessary prejudice results to the accused. None of those grounds are present here. La.Code Crim.Proc. arts. 770, 771 and 775.

### Bill 11

■ After argument on another objection made by defense counsel, the prosecuting attorney resumed interrogation of the chemist, saying, "I forget where I am with the copious . . . ." Defense counsel objected to the use of the word "copious", presumably because the prosecuting attor-

ney was alluding to the many objections defense counsel entered at the trial. The objection was overruled and this bill was reserved.

There is no merit to this bill. Counsel interrupted the prosecutor after he uttered the word "copious" without waiting for the sentence to be completed. The remark of the prosecutor was improper and the objection was frivolous. However, neither violates any rule of law or presents any question of prejudice to this accused.

### Bills 13 and 21

■ As previously noted, at the time of Clouatre's arrest the police seized from his person a hypodermic syringe, hypodermic needle and needle cover, and a bottle cap. Later, when these objects were analyzed in the crime laboratory the residue in the bottle cap, or cooker, was found to contain heroin, but tests run on the hypodermic syringe, needle and needle cover, or sleeve, were free of any narcotic drug.

When the State's expert witness, the chemist, was testifying about the heroin residue in the bottle cap he also took out of the evidence envelope the hypodermic syringe, needle and sleeve which had been found to be free of heroin. Defense counsel objected to the hypodermic syringe, needle and sleeve being shown to the jury, asserting that these objects "have nothing to do with this case." Bill 13 involves the

overruling of this objection. Bill 21 was reserved by defense counsel when, over his objection, the court permitted the State to introduce the syringe, needle and sleeve in evidence.

These bills lack merit. Since this narcotic outfit was validly seized from the person of the accused at the time of his arrest, these objects were admissible to show intent and guilty knowledge.

Our often approved decision in State v. Johnson, 228 La. 317, 82 So.2d 24 (1955), affirmatively settles the question that guilty knowledge is an essential element of the crime of possession of narcotic drugs. State v. Smith, 257 La. 896, 244 So.2d 824 (1971).

Though intent is a question of fact, it need not be proven as a fact, but may be inferred from the circumstances of the transaction. La.R.S. 15:445.

It was permissible, therefore, for the State to introduce the narcotic outfit in evidence to show, from the circumstance of this paraphernalia in Clouatre's possession, that he used these to inject heroin into his veins; that he knew he had heroin in his possession and, therefore, intended to possess the forbidden narcotic.

### Bill 14

One of the detectives involved in the arrest of the accused testified for the State.

He explained the circumstances which led to the arrest. When the officers approached Clouatre they beheld small glassine envelopes in his hand, which he hurriedly tossed into his mouth as they approached. Seeing this, the officers closed in on him and tried to prevent his swallowing the envelopes which they believed contained heroin. During the struggle which ensued Clouatre exclaimed, "It's down, it's down!", and then ceased to resist the officers.

Defense counsel argued this exclamation of the accused was an inculpatory statement made without the predicate the law requires, and, as such, objectionable. The objection was overruled and this bill reserved.

■■■■ The basis for the trial judge's ruling was that the statement was part of the *res gestae* and admissible as such. La. R.S. 15:447. The ruling is correct. Inculpatory statements which are voluntary and part of the action at the time the crime is being committed are in no sense to be governed by the rules applicable to confessions or inculpatory statements set forth in Article 768 of the Code of Criminal Procedure. Nor are these statements subject to the warnings prescribed by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Miranda the Court declared: "Volunteered statements of any

kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

■■■■ The house which Clouatre was seen to enter had been under surveillance by detectives. While one of these detectives was testifying, the prosecutor asked him if Clouatre lived there. The question was objected to and when the witness was permitted to answer, "No, Sir, he did not," this bill was reserved. This was relevant testimony tending to show association with a residence where narcotic traffic was known to take place. By this and other evidence the proof of Clouatre's intent to possess narcotics could be inferred. La. R.S. 15:447; State v. Smith, 257 La. 1109, 245 So.2d 327 (1971).

### Bills 16 and 17

■■■■ These bills rest upon a contention that the trial judge unnecessarily restricted defense counsel's cross-examination of the State's witnesses. During the trial defense counsel had repeatedly questioned the officers who arrested Clouatre about the exact time of the arrest. Sustaining the prosecutor's objection to this repetitious interrogation, therefore, was clearly within the province of the trial judge to regulate the orderly trial of the case.

In the discipline of his court, the trial judge is vested with sound discretion to

stop the prolonged, unnecessary and irrelevant examination of a witness, on direct or cross, and even though no objection be urged by counsel. La.R.S. 15:275.

This bill lacks merit.

### Bills 18 and 20

■ These bills were reserved when one of the detectives present at Clouatre's arrest explained by his testimony the meaning of "track marks", testifying that at the time of Clouatre's arrest track marks and fresh scabs behind his knee were observed by the arresting officers. At this time the prosecutor showed the witness a plastic disposable medical syringe, disposable hypodermic needle and a bottle cap, or "cooker" (all seized from Clouatre at the time of his arrest) and asked the detective to identify these items and explain their purpose and use. These bills have no merit.

In a recent decision this Court affirmed the principle that evidence of track marks is relevant as tending to prove that the accused knew that he was in possession of heroin at the time of his arrest. State v. Smith, 257 La. 896, 244 So.2d 824 (1971).

■ Since guilty knowledge is an essential element, the State is entitled to prove such intentional possession of narcotics by proof of possession on other occasions. Intent may be proved by evidence

of similar acts independent of the act charged, for intent may be inferred from circumstances. La.R.S. 15:445.

Thus, the explained purpose of this narcotic paraphernalia found on the accused has a direct bearing upon the essential element of intent.

### Bill 22

■ While Detective Soule was being cross-examined by defense counsel about the scabs he saw on Clouatre's leg at the time of his arrest, Soule stated there was no way to tell how old a scab was, except that it generally takes from five to eight days for a scab to fall off, and when a scab is very recent it is usually surrounded by a red band.

This witness then concluded his explanation by saying, "it is possible that he (Clouatre) did up within 20 hours prior to his arrest." Defense counsel then asked, "But you can't say definitely under oath?", to which Soule replied, "No, sir, no one could say definitely, except your client, sir."

Whereupon, defense counsel moved for a mistrial, on the ground, as we understand, that the witness made a comment on defendant's failure to take the stand. The theory inferred is that the witness' testimony could only be rebutted by the accused, and failure of the accused to take the

stand would leave this question unanswered. Reliance is placed upon Article 770 of the Code of Criminal Procedure, the pertinent portion of which reads:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> \* \* \* \* \* \*
>
> (3) The failure of the defendant to testify in his own defense; . . . .

It is doubtful that the witness' remark can be said to be a comment on the failure of the accused to take the stand. We judge it is not. Moreover, the statement was made in response to a question by defense counsel on cross-examination. It was not a statement by "the judge, district attorney, or a court official." And, although it is contended that the statement was gratuitous and uncalled for, it was in explanation of the answer to the question propounded by defense counsel. As such it was permissible and unobjectionable. Cf. State v. Graves, 259 La. 526, 250 So.2d 727 (1971).

This bill is without merit.

The conviction and sentence are affirmed.

DIXON, J., concurs.