339 So.2d 804 (1976)
STATE of Louisiana
v.
Samuel COREY.
No. 58138.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
*807 F. Irvin Dymond, Law Offices of Dymond & Crull, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Geraldine S. Veazey, Asst. Dist. Attys., for plaintiff-appellee.
SANDERS, Chief Justice.
The Orleans Parish Grand Jury indicted the defendant for the first-degree murder of Patricia Albernoski Giesick, a violation of LSA-R.S. 14:30. After trial by jury, he was found guilty as charged. The trial judge imposed the mandatory death sentence. On appeal, defendant relies upon seventeen assignments of error for reversal of his conviction and sentence; the remaining assignments of error, having been specifically abandoned, are not considered.

ASSIGNMENTS OF ERROR NOS. 6, 7, 8, AND 20
Assignments of Error Nos. 6, 7, and 8 relate to the testimony of Officer John P. Dillman of the New Orleans Police Department. Dillman identified documents he personally secured from the Ramada Inn, Holiday Inn, and Avis Rent-A-Car.
Assignment of Error No. 20 was reserved by defendant when the trial court allowed into evidence original telephone slips received from both the Quality Inn and Holiday Inn showing telephone calls made by the defendant. Defendant argues that these documents represented inadmissible hearsay information, and they were, therefore, inadmissible.
Assignments of Error Nos. 6, 7, and 8 are without substance. Defense counsel had originally objected to the introduction of this evidence, but when the State offered it into evidence, defendant specifically stated that he had no objection to its introduction into evidence. (Vol. IV, 12, 161-162). Defendant waived any right to raise these issues on appeal. LSA-C.Cr.P. Art. 841,State v. Marcell, La., 320 So.2d 195 (1975).
In Assignment of Error No. 20, defendant objects to the introduction of "telephone slips" from the Quality Inn and the Holiday Inn showing telephone calls made by defendant on certain dates in question. A police officer retrieved the telephone records from the Quality Inn and Holiday Inn showing that the defendant had called the Giesick residence. The defendant contends this was error because no employee of either motel testified concerning the telephone slips.
At trial, the officer testified that he had picked up the slips from the Holiday Inn on the day of the trial and brought them into court himself. He also testified that he had secured the document from the Quality Inn on April 22, 1975, identifying the document in court which bore his initials and date. The documents showed that the defendant had called the Giesick residence in Texas. Mrs. Giesick had previously testified that Corey had called her several times and that *808 she was acting as a "go-between' for Corey and Giesick in a scheme to collect insurance on the life of Patricia Albernoski Giesick. The defendant denied calling Giesick. These documents tended to show that the defendant did telephone the Giesick residence from New Orleans.
While LSA-R.S. 15:434 specifically states that hearsay is inadmissible, it also recognizes exceptions to that general rule. LSA-R.S. 15:460 provides for the admission of business records under certain circumstances. In State v. Launey, La., 335 So.2d 435 (1976), we held:
"Business records are admissible in evidence if relevant and material without the necessity of identifying, locating or producing as witnesses the individuals who made the entries in the regular course of business."
The trial court correctly stated:
"This court felt that the documents were business documents kept in the usual course of business, that they were properly identified by the retrieving officer and that they were proper rebuttal."
Assignments of Error Nos. 6, 7, 8, and 20 are without merit.

ASSIGNMENT OF ERROR NO. 9
This assignment of error arose as a result of the trial court's permitting the State to adduce testimony from an investigating officer relating to a statement made by the defendant in San Antonio, Texas prior to being advised of his constitutional rights enumerated by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant alleges that the Miranda warnings were required because defendant was the focus of a criminal investigation and was in custody at the time the statement was made. The State argues that this contention is belied by the record and that the statements were properly admitted.
When an accused is in custody, Miranda warnings must be given prior to interrogation. However, when the questioning is non-custodial, Miranda warnings are not essential. The objective test to determine the necessity of the warnings must be applied. United States v. Hall, 421 F.2d 540 (2d Cir. 1969). An examination of the record normally discloses four factors that are particularly helpful in this task: (1) whether, prior to interrogation, probable cause existed to arrest the accused; (2) statements or actions by the police indicating an intention to hold or restrain him; (3) statements or actions by the accused indicating his reasonable belief that he is in custody; and (4) the extent to which the investigation has focused on the accused.
At the time Dillman questioned the defendant, the police did not have probable cause to arrest him. The questioning was merely investigatory. Defendant would have been permitted to leave if he had so desired, and, as the trial judge correctly noted, the defendant, at this stage, did not believe himself to be a suspect. There is no indication that the statements or actions of the officer gave the defendant reason to believe that he was in custody or under restraint when he was questioned. Therefore, the lack of Miranda warnings does not bar admission of the testimony regarding these statements. State v. Roach, La., 322 So.2d 222 (1975).
Assignment of Error No. 9 is without merit.

ASSIGNMENTS OF ERROR NOS. 10, 12, AND 14
These assignments of error are consolidated for discussion since, in each, it is contended that photographs admitted into evidence were so prejudicial as to outweigh their probative value, and that their admission constituted reversible error.
The State and defendant agree on the fundamental principle of law which governs the admissibility of the photographs: the probative value of the photographs must outweigh their prejudicial impact. State v. Smith, La., 327 So.2d 355 (1976).
In Assignment of Error No. 10, defendant alleges that certain photographs shown to *809 the jury were inflammatory and highly prejudicial. The trial court excluded some photographs which it considered inflammatory or repetitious but allowed the introduction of the contested photographs. A careful examination of the record verifies the explanation for the introduction of the photographs given by the trial judge. The trial judge's Per Curiam correctly disposes of the defense contention:
"This assignment of error was taken when, over objection by the defendant, this court permitted the State to introduce exhibits S-16 through S-22, S-30, 31 and 33, and to exhibit same to the jury. The objection of the defense was based on the fact that these photographs were inflammatory and highly prejudicial to the defendant. However, the court allowed the photographs into evidence after excluding a number of other photographs which it determined in its own mind to be inflammatory and/or repetitious. The reason for the introduction into evidence, over objection, was that the State had removed from the undercarriage of a 1974 Monte Carlo automobile which the State contended was the death vehicle particles of hair and scalp which the State again contended was that of the victim. The 1974 Monte Carlo was further linked by other evidence to the possession of the defendant, Sam Corey. It was, therefore, necessary for the State to lay the proper predicate for the exhumation of the deceased, the removal of particles of hair and scalp from the body of the deceased after exhumation and to link that up with the hair and skin particles found in the undercarriage of the 1974 Monte Carlo. These pictures reflecting this procedure, therefore had a definite function in the State's case in chief. Further, the scenes depicted in these exhibits were highly probative and corroborative of the State's main issue against the defendant, to wit: that the car rented by the defendant, Sam Corey, was the car used to kill the deceased, Patricia Albernoski Giesick."
Even if photographs are unpleasant or repulsive, this does not mean that they are necessarily inadmissible. The test of admissibility is whether the probative value of the photographs outweighs the prejudice which may result from their display to the jury. In this case, the probative value of the photographs outweighed any prejudicial effect that they might have. State v. Cooper, La., 334 So.2d 211 (1976); State v. Smith (On Rehearing), La., 327 So.2d 355 (1976); State v. Beach, La., 320 So.2d 142 (1975).
Assignment of Error No. 12 relates to a photograph of the victim after she had been exhumed, S-27, introduced in connection with Officer Dan Henderson's testimony. He identified the person in the photograph as the same person whose body he had found at the scene of the reported hit-and-run accident on January 16, 1974.
The relevance of this photograph and testimony is obvious: it provided the essential link between the body found at the scene of the crime and the exhumed body from which the hair and scalp particles were removed that ultimately established defendant as the driver of the murder vehicle.
Since the probative value of the photograph thus clearly outweighed any prejudicial effect it might have had, it was properly admissible in evidence. State v. Curry, La., 292 So.2d 212 (1974).
Assignment of Error No. 14 deals with a photograph of the victim taken prior to her death and identified by her mother at the trial. Defendant makes the novel argument that its admission constituted reversible error because it: "served to intensify the extent of the injuries suffered by the victim by providing a contrast."
The introduction of this photograph was proper to establish the identity of the victim, and the photograph, taken prior to the victim's death, was in no way gruesome; hence, it was admissible. State v. Smith, supra. Furthermore, as the trial judge points out in his Per Curiam, there was another very important reason for admitting the photograph into evidence:

*810 "The Court allowed the introduction of S-46 in order to establish the identify of the victim. S-46 was a picture of the victim taken prior to her death and in no manner was gruesome or prejudicial to the defendant. As a matter of fact, the identity of the deceased could have been established by a showing of one of the previously introduced exhibits which depicted a morgue picture and/or the exhibits from the exhumation. However, the witness identifying Patricia Albernoski Giesick was the deceased's mother and this court felt that a showing of any of the previous exhibits would not only be cruel and inhumane, but also would cause the witness to break into hysteria and thereby definitely prejudice the defendant. An identity by means of S46 from the witness which could then be compared to the other exhibits by the jury would definitely establish an essential element of the State's case, to-wit: the identity, without the possibility of any prejudicial effect to the defendant."
Assignments of Error Nos. 10, 12, and 14 are without merit.

ASSIGNMENT OF ERROR NO. 11
Here, defendant alleges that he was restricted in his cross-examination of Detective Dillman. The assigned error recites that: "the court sustained the state's objection to defense counsel asking the witness, Dillman, a line of questions designed to show the officer's experience as a witness, his knowledge of the rules of evidence relative to hearsay testimony, and the ultimate fact that the officer had deliberately interjected hearsay testimony knowing same to be improper and that the false inference created by the officer's testimony was designed to prejudice the defendant."
The record reveals that defense counsel had already questioned Dillman on the rules of evidence, especially hearsay. The court sustained the State's objection only after the cross-examination became repetitious and argumentative. The trial judge was of the view that cross-examination of the witness was adequate and that defendant was not unduly prejudiced by his ruling. We agree.
Assignment of Error No. 11 is without merit.

ASSIGNMENT OF ERROR NO. 15
This assignment of error arose as a result of the trial court's overruling defendant's objection to an answer given by a State's witness, David Louis Merrick, II. Merrick, an insurance salesman, had testified that the defendant and Claudius Giesick had questioned him in detail about buying an insurance policy. Merrick was asked what type of questions Giesick and Corey had asked. He first replied, "Well, I guessI thought that they were lawyers or something." At this point, defendant objected, stating: "Your Honor, I object to this. If the witness remembers what the questions were, I would have no objection, but to let him characterize the questions as a certain type . . ." The Court then stated: "I'll sustain the objection. Just tell us what type of questions they were asking you." The witness responded: "They were legally based questions." Defendant again objected to the answer, but was overruled.
We find no error in the trial court's ruling. It is well settled that a non-expert witness may draw natural inferences from facts personally observed by him. State v. Lewis, La., 288 So.2d 324 (1974). Due to the fact that Giesick and defendant asked the witness a variety of questions about insurance coverage which demonstrated technical knowledge of the law, this witness could infer that these questions were "legally based." For example, Merrick related how defendant and Giesick questioned him about hit-and-run clauses, about accidents on public thoroughfares and about specific conditions under which payment would be received on the policy. It is obvious that the witness had a factual basis upon which to classify the questions.
Assuming, however, that the testimony was improper, the defendant has exhibited no prejudice to himself, and we are able to *811 find none; therefore, if error was committed, the error was harmless. LSA-C.Cr.P. Art. 921.
Assignment of Error No. 15 is without merit.

ASSIGNMENT OF ERROR NO. 16
Defendant here assigns error to a question asked by the district attorney during the cross-examination of William Miller, one of defendant's attorneys. The circumstances are reflected in the trial judge's Per Curiam, as follows:
"This assignment of error was taken when the court overruled defendant's objection to a question of Mr. William Miller by the State on its cross-examination, to-wit: `Mr. Miller, isn't it a fact that at one time the district attorney's office in San Antonio planned to indict you for perjury?'
"In order to understand the court's ruling on this objection, the following should be pointed out. On the morning of April 25, 1975, and prior to the commencing of the trial for that day, Mr. Dymond and Mr. William Miller, co-counsel for the defendant Sam Corey, approached this court in chambers with the request that I allow Mr. Miller, since he was an attorney, to take the witness stand in order to refute certain derogatory remarks made by Claudius Giesick about Mr. Miller during Claudius Giesick's testimony. In essence, Giesick had testified that when William Miller represented him that he had suggested he go to a psychiatrist in order to establish some type of insanity defense. Giesick further testified that Miller had suggested to Giesick that he lead the psychiatrist astray so that the psychiatrist would give a diagnosis favorable to Giesick. It was Mr. Miller's desire that he be allowed to take the stand so that he could refute the statements of Giesick since they implied that Mr. Miller was acting in an unethical manner. Although it was this court's desire that Mr. Miller not take the witness stand, nor was it this court's opinion that it was necessary, Mr. Miller and Mr. Dymond were adamant. Therefore, the court allowed Mr. Miller to testify. On direct examination Mr. Miller testified that he had at no time suborned perjury by instructing or advising Giesick to go to a psychiatrist and, by stating untruths, build up a defense to a criminal case. (See p. 47 April 25th trans.) By so testifying, it was this court's opinion that Mr. Miller was placing his own character in evidence and that the question of the district attorney with regard to an indictment for perjury was proper. However, it should further be noted that Mr. Miller desired and did answer the question to the fullest.
"It should again be noted that Mr. Miller adamantly insisted upon taking the witness stand over this court's advice that he should not." Vol. I, Tr. pp. 29-30.
The State alleges that the question was permissible under State v. Luckett, La., 327 So.2d 365 (1976) and LSA-R.S. 15:490 which provides:
"The credibility of a witness may be attacked generally, by showing that his general reputation for truth or for moral character is bad, or it may be attacked only in so far as his credibility in the case on trial is concerned."
We disagree. LSA-R.S. 15:495 prohibits cross-examination as to indictments. Since cross-examination as to indictments is prohibited, certainly cross-examination concerning an indictment which was never filed is prohibited. Though the question was impermissible cross-examination, we do not find that it was reversible error for several reasons: reversal cannot be predicated on such error due to the witness's insistence on answering the question; counsel's failure to object to subsequent questioning along the same line; and the lack of showing of prejudice to the defendant caused by the question. LSA-C.Cr.P. Art. 921; State v. Dimopoullas, 260 La. 874, 257 So.2d 644 (1972).
Further, it is well established that the control of the examination of witnesses is in the sound discretion of the trial judge and that his rulings will not be disturbed in the *812 absence of abuse of this discretion. State v. Singleton, La., 321 So.2d 509 (1975). The court did admonish the jury to disregard the question. We find that this was sufficient to cure the defect and that there was no abuse of the discretion vested in the trial court.
Assignment of Error No. 16 is without merit.

ASSIGNMENT OF ERROR NO. 17
This assignment of error arose as a result of the trial court's overruling defense counsel's objection to a question asked by the State during defendant's cross-examination relating to statements the defendant made to a newspaper reporter. Defense counsel alleges that a proper foundation had not been laid for the question. Defendant was first asked:
"Q. Do you know a gentleman by the name of Pete Franklin, Mr. Corey?
"A. Yes Sir.
"Q. Who is Pete Franklin?
"A. He's a reporter.
"Q. From San Antonio?
"A. Yes, sir.
"Q. Didn't you tell Pete Franklin that you admitted to having been with Giesick at the Dallas-Fort Worth Airport many times, but that you had `absolutely nothing to do with any insurance'? Did you tell him that?
"A. I don't recall.
"Q. You don't recall?
BY MR. DYMOND: Your Honor, I don't think a proper foundation has been laid for any conversations that are purported to . . .
BY THE COURT: Overruled.
BY MR. DYMOND: Note an objection, please.
"EXAMINATION BY MR. WHALEN:
"Q. Did you say that you were never with him at any time when he purchased insurance for himself or for his bride, nor were you with Giesick when he inquired about insurance? Did you tell Pete Franklin that?
"A. I don't know. I don't know if he even asked me that.
BY MR. DYMOND: Your Honor, this is a series of newspaper articles that would take me fifteen or twenty minutes to read."
After objection was made and overruled, Corey was shown a series of newspaper articles in which he made the statement attributed to him by the reporter, Franklin; Corey again stated he did not recall making such statements. Nothing further was pursued along this line of questioning and the articles (S-52) were not then introduced.
It is clear from the above testimony that the defendant did not admit making the prior statement. Hence, the foundation was sufficient to permit the introduction of the statement itself from the newspaper articles. LSA-R.S. 15:493; State v. McMellon, La., 295 So.2d 782 (1974).
Assignment of Error No. 17 is without merit.

ASSIGNMENT OF ERROR NO. 19
This assignment of error resulted from the trial court's denial of defendant's motion for a mistrial in which defendant charged that the district attorney had made improper comments upon defendant's testimony. The State contends that if any prejudice was generated by this remark, it did not warrant the granting of a mistrial.
The State was attempting to establish the defendant's movements after committing the murder. The defendant's memory became faulty when he was asked where he was when he found out that the victim was dead. He could not recall. The assistant district attorney replied: "Somehow I didn't expect you would."
This statement does not fall under Article 770 of the Louisiana Code of Criminal Procedure dealing with a mandatory mistrial, since it is not based on any of the grounds for mistrial enumerated in that article. See, State v. Batiste, La., 318 So.2d 27 (1975).
*813 Article 771 of the Louisiana Code of Criminal Procedure might be applicable in this situation, this article states that if an improper comment is made by representative of the State, the trial court shall promptly admonish the jury to disregard such comment. A mistrial need not be granted if the trial court believes that any prejudice was cured by the admonition. In any event, it is incumbent on the party moving for the mistrial to request the admonition. State v. Richardson, 258 La. 62, 245 So.2d 357 (1971). In this case, the trial court admonished the jury sua sponte.
Assignment of Error No. 19 is without merit.

ASSIGNMENT OF ERROR NO. 21
Defendant assigns as error the trial court's permitting a state's witness, Joe Schumacher, to testify on rebuttal over defense objection. This witness was the manager of the motel where Claudius and Patricia Giesick stayed in New Orleans. On April 24, 1975, he had testified that he had received a call from Methodist Hospital through one of his clerks notifying him of the death of Patricia. He identified Corey as the man with Giesick on January 16, 1974, when the call was received. The testimony to which the defendant objected was taken on April 26, 1975, two days after this witness's initial testimony. The questions asked by the district attorney merely re-established Schumacher's occupation and the circumstances under which he came in contact with the defendant.
In the two-day period between Schumacher's initial testimony and this incident, many other witnesses had given extensive testimony. The State, therefore, undertook to refresh the minds of the jurors as to Schumacher's identity. Further, this testimony was proper rebuttal because the defendant had in the meantime stated that he wasn't really sure where he was when he was informed that Patricia Albernoski Giesick was dead. In effect, he had contradicted Schumacher's prior testimony and made a factual statement. Hence, the testimony was proper rebuttal. State v. Washington, La., 272 So.2d 355 (1973); State v. Diggs, 261 La. 76, 259 So.2d 18 (1972).
Assignment of Error No. 21 is without merit.

ASSIGNMENT OF ERROR NO. 22
Defendant assigns as error the trial court's denying defendant's Requested Special Charges Nos. 1, 4, and 13.
Special Charge No. 1 dealt with accomplices and was essentially covered in defendant's charges Nos. 2 and 3 which were granted.
Special Charge No. 4 was directed at the testimony of police officers: that such testimony was not to be given any greater weight than that of any other witnesses. In instructing the jury regarding how to deal with evidence adduced from experts and non-experts, the Court covered the subject matter of the requested special charge; therefore, its denial was not error.
Special Charge No. 13 dealt with reasonable doubt which was covered in the general charge; hence the denial of the special charge was not error.
Defendant also complains that he was not given adequate time in which to examine the trial court's intended jury charge. Specifically, defendant urges this Court to require the trial court to give the defendant "sufficient time" prior to the giving of the instructions in which to peruse the charges and make specific objections. The trial court followed the provisions of Article 801 of the Louisiana Code of Criminal Procedure. The same contention has previously been rejected in State v. Tarrance, 252 La. 396, 211 So.2d 304, cert, denied 393 U.S. 1038, 89 S.Ct. 662, 21 L.Ed.2d 586 (1968).
Assignment of Error No. 22 is without merit.

ASSIGNMENT OF ERROR NO. 23
Defendant alleges that the trial court erred when it denied defendant's motion for *814 a new trial in which defendant alleged that the State utilized a procedure designed to secure jurors who were prone to convict as demonstrated by their record of performance in the course of their duty as members of the petit jury venire from which the trial jury in this case was selected.
A challenge to the general venire or petit jury venire is properly raised by a Motion to Quash. LSA-C.Cr.P. Art. 532; State v. Speed, La., 335 So.2d 28 (1976).
In the present case, the defense neither used the proper procedural vehicle for raising its objection nor offered specific evidence of improprieties in the jury selection procedure.
Assignment of Error No. 23 is without merit.

ASSIGNMENT OF ERROR NO. 24
Defendant here assigns error to the trial court's refusal to grant a new trial, contending, in effect, that the evidence it presented at the hearing on the Motion for New Trial showed that Mrs. Kathy Giesick, a witness for the State, committed perjury in testifying that she had not been granted immunity for her testimony against Sam Corey.
Since the assignment arises in the context of a Motion for New Trial based on newly discovered evidence, it is governed by the general rule that the trial judge's ruling should not be disturbed in the absence of a clear abuse of discretion. State v. Barton, 181 La. 262, 159 So. 383 (1935). An examination of the record reveals no such abuse of discretion.
Appellant concedes in brief that his evidence was entirely circumstantial. The parties who could give direct evidence on the existence of a "deal"the prosecuting attorney, and Mrs. Giesickemphatically and unconditionally denied any such arrangement.
In rebuttal of this clear and convincing evidence, appellant presented the testimony of one Thomas Phillips, who claimed he had overheard Claudius Giesick say "They lied" on learning of his wife's arrest.
When Giesick was called to explain what he meant, he stated that he was referring to his attorney when he said "they." If anything is clear from Giesick's testimony it is that his anger was due entirely to the representations of his attorney and not to anything the District Attorney or any officer of the District Attorney's staff said or did.
Assignment of Error No. 24 is without merit.
On July 2, 1976, the United States Supreme Court invalidated the mandatory death penalty provision of our first degree murder statute, LSA-R.S. 14:30, as violative of the Eighth and Fourteenth Amendments, Roberts v. State of Louisiana, U.S. ___, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). Complying with this decision, this Court has concluded:
". . . that the appropriate sentence to be imposed upon a valid conviction for first degree murder is the most severe penalty established by the legislature for criminal homicide at the time of the offense, La.R.S. 14:29 et seq., which we may presume to constitutional in the wake of Roberts v. Louisiana, supra. This penalty is imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years. See La.R.S. 14:30.1, as added by Acts 1973, No. Ill, § 1."
State v. Jenkins, La., 340 So.2d 157 (1976); State v. Davenport, La., 340 So.2d 251 (1976). See also State v. Sledge, La., 340 So.2d 205 (1976); State v. Morris, La., 340 So.2d 195 (1976); State v. Lee, La., 340 So.2d 180 (1976); State v. Craig, La., 340 So.2d 191 (1976).[1]
Since the United States Supreme Court struck down our provisions relative to capital punishment, the defendant must be resentenced. Roberts v. State of Louisiana, *815 supra. The appropriate sentence to be imposed on a defendant properly convicted of first degree murder is the most severe penalty set forth for criminal homicide at the time of the offense. Therefore, the defendant must be resentenced to imprisonment at hard labor for life without the benefit of parole, probation, or suspension of sentence for a period of twenty years.
For the reasons assigned, the conviction is affirmed, but the death sentence imposed is annulled and set aside, and the case is remanded to the district court, with instructions to the trial judge to sentence the defendant to imprisonment at hard labor for life without eligibility for parole, probation, or suspension of sentence for a period of twenty years.
DIXON, J., dissents with reasons.
CALOGERO, J., concurs.
DIXON, Justice (dissenting).
Because it appears that the conviction of the defendant was obtained, in part, by the use of inadmissible hearsay evidence, I respectfully dissent. On some assignments of error, I agree in the conclusion, but disagree in the treatment in the majority opinion and therefore concur in the disposition of Assignments Nos. 6, 7 and 8.

Assignment of Error No. 6

This assignment involved the introduction of S-10, a photocopy of the defendant's bill at a Holiday Inn, and S-11, the bill, reservation card and credit card invoice relative to the stay of the defendant at a Quality Inn. Although these exhibits were not initially introduced into evidence, Detective Dillman did testify that through the use of these records he was able to determine whether Mr. Giesick was accompanied by anyone into New Orleans. However, when the State did eventually offer these documents into evidence, defense counsel said that he had no objection to their introduction. It appears that the defendant did waive any objection he had.

Assignment of Error No. 7
State's Exhibits S-4, S-5 and S-47 were records and receipts and documents regarding a rented car from Avis. Initially, when they were being discussed by Detective Dillman, the State sought to introduce them into evidence. Defense counsel objected on the grounds that the Avis man himself should testify to lay the foundation for the documents. The trial court sustained the objection and the documents were not introduced at this time. Subsequently the Avis man did testify and then the State again sought introduction of the documents into evidence. Defense counsel at this time indicated that he had no objection to their introduction. Consequently, the defendant waived any objection he may have had.

Assignment of Error No. 8
In this assignment the defendant objected to the testimony of Detective Dillman about the 1974 Monte Carlo (allegedly used in the crime) which had been traced through the business records discussed in Assignment No. 7 above. Certain photographs of the undercarriage of the car were given to the witness for identification. Numerous objections were made to questions asked of Dillman and a number were sustained. Finally, he testified that these were the same pictures that had been given to him by one Officer Palm who apparently had conducted the initial investigation of the car. These photographs were not introduced, as far as I can determine, and no error was committed.

Assignment of Error No. 20
Assignment No. 20 has to do with the "business records" exception to the hearsay rule. The defendant objected to the introduction of "telephone slips" from the Quality Inn and Holiday Inn, showing calls made by the defendant on certain dates in question. A police officer testified that he had retrieved the slips from the motels. No employee of either of the motels was put on the stand to establish any sort of foundation for the introduction of these records.
*816 When the State sought to introduce these documents into evidence, defense counsel objected. The trial judge overruled the objection and allowed the introduction of the documents. Here it appears that the defendant's objection does have merit. The "business record" exception to the hearsay rule is embodied in R.S. 15:460:
"Any document, other than an authentic act, may be proved by any one who saw it written, or by a comparison of hands, or by any one who, from his knowledge of the handwriting of the person alleged to have written the document can testify that the document produced is in the handwriting of said person."
No such proof as required by this article was offered. The case of State v. Graves, 259 La. 526, 250 So.2d 727 (1971), recognized such an exception. The business records were held to be admissible. However, in that case, one of the clerks at the hardware store where the gun was bought testified at trial that all sales of guns were recorded in a "firearms record," and that a second clerk had made that particular entry. The testifying clerk, however, identified the handwriting of the second clerk. Hence a proper foundation had been laid. This is not the case here.
In State v. Launey, 335 So.2d 435 (La. 1976), the "business records" doctrine was apparently expanded without mentioning R.S. 15:460. The following language was used:
"Business records are admissible in evidence if relevant and material without the necessity of identifying, locating or producing as witnesses the individuals who made the entries in the regular course of business. While some question may surround the failure to establish the unavailability of the Mamou Hardware representative who wrote the sales receipt, no such doubt exists with respect to the person who prepared the owner's registration card for Evinrude in Wisconsin. Considering the distance and expense involved in requiring that person to appear at the trial, it can be considered that he was, for all practical purposes, unavailable. Because the Mamou Hardware sales receipt contained the same information it was merely cumulative and the failure to establish the unavailability of the writer was harmless." 335 So.2d 435, 437.
The opinion in the Launey case formulates the broad rule:
"`A permanent record made in the ordinary course of business, by a person unavailable for testimony, from personal knowledge of the facts recorded or from information furnished by one having a business duty to observe and report the facts, is admissible as proof of the facts recorded, in the absence of a strong motive to misrepresent if the record is the first collected and recorded memorial.' Comment, Business Records in Louisiana as an Exception to the Hearsay Rule, 21 La.L.Rev. 449, 451 (1961), quoted in a footnote to State v. Hodgeson, 305 So.2d 421 (La.1974)." 335 So.2d 435, 437.
However, in both the Law Review article cited and the case of State v. Hodgeson, 305 So.2d 421 (La.1974), this rule was cited as the common law rule in this area.
In State v. Hodgeson, supra, error was alleged in the introduction of copies of the defendant's telephone bill. However, the comptroller-office manager of the particular branch of the telephone company testified as to how the bills were compiled, that he supervised the compilation by workers in his office, and how the information was fed into the computer. This clearly distinguishes Hodgeson from Launey and the instant case. The following language was used in the Hodgeson decision:
"Defendant contends that the evidence was inadmissible because it was hearsay and violated the best evidence rule. R.S. 15:434 and R.S. 15:436. Its admission confronts this court with the issue of the admissibility of computer print-out sheets, the telephone statements in this case, under the recognized exception to the hearsay rule for business records prepared in the ordinary course of business. State v. Lewi's, 288 So.2d 348 (La.1974); State v. Graves, 259 La. 526, 250 So.2d 727 (1971). See, Comment, `Business *817 Records in Louisiana as an Exception to the Hearsay Rule,' 21 La.L.Rev. 449 (1961); Green, `The Model and Uniform Statutes Relating to Business Entries as Evidence,' 31 Tul.L.Rev. 49 (1956); McCormick, on Evidence, §§ 304-314 (2d Ed. 1972); 5 Wigmore, § 1517 et seq. (3d Ed. 1940); Anno: `Business Records as Evidence,' 21 A.L.R.2d 773 (1952)."
"The Nebraska result was followed in King v. State ex rel., Murdock Acceptance Corp., 222 So.2d 393 (Miss.1969), where the Mississippi Supreme Court adopted the following rules for the admission of computer records and printouts:
"`. . . we hold that print-out sheets of business records stored on electronic computing equipment are admissible in evidence if relevant and material, without the necessity of identifying, locating, and producing as witnesses the individuals who made the entries in the regular course of business if it is shown (1) that the electronic computing equipment is recognized as standard equipment, (2) the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and (3) the foundation testimony satisfies the court that the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission.' (222 So.2d 398).
"In adopting these rules as our own, we also note with approval Judge Ely's concurrence in United States v. De Georgia, 420 F.2d 889 (9th Cir. 1969), in which he stated:
"`. . . If a machine is to testify against an accused, the courts must, at the very least, be satisfied with all reasonable certainty that both the machine and those who supply its information have performed their functions with utmost accuracy. Therefore, it is essential that the trial court be convinced of the trustworthiness of the particular records before admitting them into evidence.
And it should be convinced by proof presented by the party seeking to introduce the evidence rather than receiving the evidence upon the basis of an inadequate foundation and placing the burden upon the objector to demonstrate its weakness.' (420 F.2d 895-896)." 305 So.2d 421, 427, 428. (Emphasis added).
In the case before us the telephone receipts picked up from the two motels did not appear to be computer print-outs. At least the same requisites should be met to establish the reliability of the hearsay evidence. The trial judge erred in not requiring proof of trustworthiness of the documents.
State v. Graves, supra, recognized the business records exception in Louisiana, although in that case a deputy clerk of the hardware store identified the practices used in the store for making the records and positively identified the handwriting of the other clerk who had made the particular entry sought to be introduced. Even with these safeguards, Professor Pugh questioned the propriety of recognizing this exception to the hearsay rule in criminal cases with the following language:
"It is a fundamental principle of Anglo-Saxon law that a defendant should not be sent to prison on unsworn testimony, and that he should have the right to full cross-examination of all persons who give evidence against him. To the extent an out-of-court statement is admissible on behalf of the state in a criminal case as an exception to the hearsay rule, this principle is abridged. Unquestionably, certain exceptions to the hearsay rule are clearly desirable. Although some business records should be admissible in criminal cases under narrow, restricted, well-defined circumstances, the writer seriously doubts whether in criminal cases Louisiana should embrace a broad regular course of business exception. To do so might well violate defendant's constitutional right of confrontation." Pugh, Work of the Louisiana Appellate Courts, for the 1971-72 Term: Evidence, 33 La.L. Rev. 169, 319 (1972-73).
*818 At 21 Loyola L.Rev. 450, 468 (Tomeny, Best Evidence and Authentication of Documents (1975)), the author used the following language to describe the exception as employed in Louisiana:
"The rationale behind the common-law exception runs throughout the Louisiana jurisprudence. Safeguards are provided by the requirement that the record must have been made contemporaneously with the transaction, in the regular course of business, on the basis of the entrant's personal knowledge. Mercantile inconvenience has also been recognized as a basis for excusing the entrant from actually appearing in court. Instead, the custodian of the records has been recognized as the proper party to authenticate them."
Therefore, the fundamental consideration for the hearsay rule is the same as that underlying the business records exception: to assure the accused the right to confront and cross-examine the witnesses against him. United States Constitution, Amendment VI; Louisiana Constitution of 1974, Art. I, § 16. The business records doctrine has been established as a practical convenience for the administration of justice. However, practical considerations must not be permitted to dilute fundamental rights.
The proper procedure here would have been for the trial judge to sustain the defendant's objection to the introduction of the "telephone slips" and then for the State to have produced the clerks who actually made those notations or the managers of the motels who could have testified as to the procedures used and could have verified the handwriting on the notations. In fact, in this case, when the trial court sustained the objections of defense counsel to the introduction of the Avis documents for want of a proper foundation, the State did produce the Avis employee involved who testified about the documents after which defense counsel did not object to the introduction of those documents. Whatever hardship is imposed upon the State in having to follow standard and accepted evidentiary procedures is far outweighed by the necessity of protecting the rights of the accused. Considering the fact that the State was using these telephone slips to show a plan between the defendant and Mr. Giesick regarding the murder, a proper foundation should have been required for their introduction into evidence.
NOTES
[1] The author of this opinion dissented from the sentence reduction in these judgments. See his dissent in State v. Davenport, La., 340 So.2d 251 (1976).